HENRY A. RAMBO, appellant,

*v.*

EMMA F. STROUD, executrix of the estate of Elizabeth C. Briggs, deceased, respondent.

[Decided February 23d, 1932.]

*Mr. George B. Evans,* for the appellant.

*Mr. George M. Hillman,* for the respondent.

LEAMING, VICE ORDINARY.

This appeal embraces the inquiry whether appellant, who claims to be a creditor of the estate of decedent, was by our statute privileged to cite the executrix of that estate to file an inventory and account without first reducing his claim to judgment by an action against the executrix.

Appellant is an undertaker and his claim is for services

performed as such in the burial of deceased. Appellant's verified claim was presented to the executrix in 1926, pursuant to section 68 of our Orphans Court act. The claim, so presented, has at no time been disputed by the executrix by notice in writing to the claimant as provided in section 71 of that act. On November 6th, 1930, pursuant to section 116 of the act, appellant filed a verified petition with the surrogate of Burlington county, setting forth that he was a creditor of the estate and that the executrix had neglected for a period of over two years to state and settle her accounts as executrix as required by law, and praying that the executrix be cited to state and settle her accounts. Thereafter the surrogate reported to the orphans court the failure of the executor to account within two years, and the orphans court thereupon issued an order upon which citation issued. The citation was duly issued November 13th, 1930, returnable before the orphans court December 18th, 1930, and duly served on the executrix. The hearing was continued by the court until April 23d, 1931, on which day it came on to be heard in the presence of proctors of appellant and the executrix. The proceedings at the hearing are fully set forth in the transcript, and no material facts appear to have been in dispute. The proctor for the executrix took the position that appellant was not "any person interested in the estate" within the contemplation of section 116 of the Orphans Court act, for the reason that the executrix had not admitted his claim and the claim had not been reduced to judgment. Appellant urged that judgment was not necessary, and offered witnesses to establish the validity of his claim should its validity be doubted. The learned court refused to hear testimony on behalf of appellant to establish the validity of his claim, and determined that in the absence of a judgment establishing his claim appellant was not entitled to cite the executrix to account. No evidence was offered on the part of the executrix to establish that appellant was not a *bona fide* creditor; the sole claim was that until the executrix admitted the claim or a judgment at law had been procured to establish its validity and amount, appellant had no standing and could have

no standing under the act to cause citation to account to issue. That view was entertained by the court and made the basis of the decree denying an account. In that I think the learned court erred.

Section 116 of the Orphans Court act (*3 Comp. Stat. p. 3853*), accords to "any person interested in the estate" the right to enforce an accounting. Obviously a creditor is such a person. Is it necessary for a creditor to have a judgment or have his claim admitted by the executor before his status as a creditor can be recognized by the orphans court in extending to him the benefits of the act?

The answer to this inquiry seems to be removed from any field of doubt by consideration of the purpose, force and application which appears to have been uniformly given to similar legislation in England and in this country. It may be said generally that in this state we inherit our probate jurisdiction, subject to statutory changes, from the English ecclesiastical courts in matters of probate and administration. As to that see specifically, *In re Hodnett, 65 N. J. Eq. 329; In re Whitehead, 85 N. J. Eq. 114; affirmed, 86 N. J. Eq. 439*. By an act of parliament in the year 1684 (*1 Jac. 2 ch. 17 § 6*), the right of a creditor of an estate to cite the administrator to account was specifically sanctioned. Under that act the ecclesiastical courts held that while they could not try the validity of the debt, they could inquire whether the person claiming to be a creditor had the appearance of being one; the affidavit of the creditor that money was due to him was thought adequate to compel the accounting sought. The general view appears to have been that if the claim appeared to be a claim made in good faith the status of the claimant as a creditor was adequately established. In the language of Sir John Nicholl: The order was made "almost as matter of course, at the prayer of any person having the appearance of an interest." Even where it appeared that the claim of indebtedness was barred by the statute of limitations, an accounting was ordered, since that statute could be waived. A release presented by the executor as a bar to the relief was deemed inadequate, since the court would "not enter into the

question how the release was obtained, nor whether it is valid." See *Smith* v. *Pryce* (*Prerogative Court, Easter Term, 1754*), *1 Lee 569; Philipson* v. *Harvey* (*Prerogative Court, January, 1757*), *2 Lee 344; Wainford* v. *Barker* (*Prerogative Court, Trinity Term, 1697*), *1 Ld. Raym. 232; Gale* v. *Luttrell,* (*Prerogative Court, Trinity Term, 1824*), *2 Add. 234; Kenny* v. *Jackson* (*Prerogative Court, Michaelmas Term, 1827*), *1 Hagg. Ec. 105.* March 2d, 1795, the legislature of this state enacted an act entitled, "An act concerning executors and administrators and distribution of intestate estates." See *R. S. 1820 p. 474.* Section 20 of that act is the same as section 6 of the act of *1 Jac. 2 ch. 17,* above referred to; the exact verbiage of that section of the English statute is adopted in the New Jersey act. Since the act of December 16th, 1784, creating an orphans court (*Pat. L. 59*), did not contain any provision of that nature, and these remedial provisions of the act of 1795 were primarily for enforcement in the orphans court, that court, in the enforcement of the act, could appropriately regard the English decisions under the identical act, already referred to, as within the purpose and intent of the act. The act of 1795 was not embodied in the Orphans Court acts until 1856. In that year (*P. L. 1856 p. 153*) a supplement to the Orphans Court act was adopted in substantially the language of section 116 of our present act, under which the proceedings here in review were had. A comprehensive statement of the views entertained in other jurisdictions in which statutes have authorized "any person in interest" to require an accounting, will be found in *11 Am. & Eng. Encycl. L. (2d ed.) 1192,* as follows: "The general rule is that a judicial settlement of the accounts of an executor or administrator may be had at the instance of any person who has an interest in the estate of the decedent, or in the proper administration of it, but no one else has a standing to call for a settlement. It is not necessary that the interest alleged as a basis of the right to an accounting should be clear and undisputed. A *prima facie* showing that the petitioner had, at the time when the petition was filed, such an interest as the law requires is suffi-

cient; and this, according to some authorities, cannot be rebutted by any opposing evidence on the hearing of the application, because the right of the petitioner cannot be litigated in such a proceeding, and the rule has been applied even where the petitioner had executed a release or assignment of his interest in or claim against the estate." In New York prior to the Code of Civil Procedure, the rule was as stated in the above quoted text. See *Gratacap* v. *Phyfe, 1 Barb. Ch. 485.* The Code of Civil Procedure, section 2514, subsection 11, provided that where any person interested may apply for an inventory, the allegation of his interest, duly verified, shall suffice, although his interest is disputed, unless he is excluded by some final determination from which no appeal is pending. In *Matter of Comins, 9 N. Y. App. Div. 492,* this provision of the code was declared to be the enactment of a rule that had always obtained in probate courts. It seems clear that from early times the almost uniform view has been entertained that a proceeding may be instituted in a probate court by a general creditor to require an executor or administrator to account, and that the probate court, though without power to adjudicate the claim, has the power to inquire and determine whether the claim appears to be a real one, as distinguished from a claim obviously without foundation and asserted in bad faith. In *1 Kocher's New Jersey Probate Law* (at *p. 624*), the following view is expressed: "The statute, as has been seen, provides that any person interested in the estate may require the executor, administrator, guardian or trustee to account; so if a creditor swears positively to a debt due him from the decedent, he will be entitled to demand an accounting." This text is based on New York cases there cited, one of which has been above referred to.

As already stated the learned judge of the orphans court held that a creditor had no standing under the act unless his claim had been reduced to judgment or had been admitted by the executrix to be a valid claim. In that he clearly erred. The only doubt which may be said to exist is as to the exact extent to which it is within the power of the orphans court

to make inquiry touching the validity of the claim. I find no adjudications in this state clearly defining the extent of that inquiry. In *Poulson* v. *National Bank of Frenchtown, 33 N. J. Eq. 250,* the case presented to the orphans court was on exceptions filed to an account. By the statute exceptions could be filed by persons in interest. It was urged that it did not appear that the exceptant was a creditor. It was there held that "it was without [within intended] the power of the court to determine whether the exceptants were to be regarded as being interested in the estate as creditors or not." (Page 253.) The illustration following the above quotation from the opinion discloses that the necessity for such inquiry may well arise before claims could be established because of want of time for that purpose. The inquiry there contemplated by the learned ordinary appears to have been the limited inquiry already herein suggested. · I understand the same view to have been entertained in the review of that case by the court of errors and appeals (*33 N. J. Eq. 618*—at *p. 620*). The exercise of that power by the court within the limited field already suggested, appears to be necessary and purely incidental to the duties imposed upon the court to entertain the petition of a creditor for an accounting. The inquiry and ascertainment by the court that claimant is apparently a creditor is in no way operative to adjudicate his claim. *Smith* v. *Smith, 48 N. J. Eq. 566* (at *p. 568*), and *Vreeland* v. *Vreeland's Admr., 16 N. J. Eq. 512* (at *p. 527*), are cited by respondent. I find in those cases no controlling analogy to the present inquiry.

The appeal is also from an order refusing to appoint a substituted administrator with the will annexed. This application was in behalf of appellant and was based on *P. L. 1912 p. 551,* which requires an executor who is not a resident of this state to file with the surrogate a power of attorney authorizing the service of process on that officer. The executrix is alleged to have moved from this state and at the instance of appellant the surrogate noticed her to file the power. That, it is alleged, has not been done. The present claim of appellant is that the statute is self-executing and that

failure to file the power of attorney within the time named in the act automatically vacates the letters of executorship, and that the court should have regarded the letters as revoked and appointed a successor, pursuant to the petition for that purpose. I am not prepared to so determine. The terms of the statute are that if the power of attorney is not filed within the time named the letters "shall forthwith and immediately be and become null, void and revoked." In a provision of that nature the legislature will not be assumed to have intended to ignore the fundamental right of all persons to be heard, if possible, before their rights shall be adjudicated. The executrix was entitled to be heard as to whether she was a non-resident, and as to whether she had in fact filed a power. There should have been an adjudication revoking the letters before the application for substituted letters should have been filed or entertained. On that ground the refusal of the orphans court to. appoint a substituted administrator should be sustained.

The decree of the orphans court will be reversed to the extent named and the cause remanded to the orphans court with instruction to proceed in the manner herein set forth.